UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


UNITED STATES OF AMERICA,      )
                           )
     Plaintiff,         )
                           )
     v.                   )
                           )
                           )  No. 4:10-CR-648 ERW
                           )
ALLEN DEAN RITCHIE,        )
                           )
     Defendant.         )

SENTENCING HEARING

BEFORE THE HONORABLE E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE


JUNE 28, 2011



APPEARANCES:

For Plaintiff:      Tracy L. Berry, Esq.
                   OFFICE OF U.S. ATTORNEY
                   111 South Tenth Street, 20th Floor
                   St. Louis, MO  63102

For Defendant:     Michael Dwyer, Esq.
                   OFFICE OF FEDERAL PUBLIC DEFENDER
                   1010 Market Street, Suite 200
                   St. Louis, MO  63101

REPORTED BY:       SHANNON L. WHITE, RMR, CRR, CSR, CCR
                   Official Court Reporter
                   United States District Court
                   111 South Tenth Street, Third Floor
                   St. Louis, MO  63102
                   (314) 244-7966


PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

1    **(PROCEEDINGS STARTED AT 4:04 PM.)**

2    **(THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT AND WITH**

3    **THE DEFENDANT PRESENT:)**

4    THE COURT:  Good afternoon.  I know you have family

5    members today because they have been patiently waiting for

6    you, so good for you.

7    THE DEFENDANT:  Yes, sir.  Thank you.

8    THE COURT:  The case I'm calling now is United States

9    of America v. Allen Dean Ritchie.  The number is

10   4:10-CR-00648-ERW.

11   Is the United States ready?

12   MS. BERRY:  Yes, Your Honor.

13   THE COURT:  Is defendant ready?

14   MR. DWYER:  Yes, Your Honor.  Thank you.

15   THE COURT:  Have you received and reviewed a copy of

16   the presentence report in this case, Ms. Berry?

17   MS. BERRY:  I have, Your Honor.  We have no

18   objections.

19   THE COURT:  Mr. Dwyer, have you, sir, and has Mr.

20   Ritchie received and reviewed a copy of the report?

21   MR. DWYER:  We have received it and reviewed it, Your

22   Honor.  We have no objections.

23   THE COURT:  All right.  Thank you.  I want to outline

24   generally what I believe the procedure will be today that we

25   shall follow.  I will be making calculations under the United

1   States Sentencing Guidelines, but I need to say on the record

2   I recognize the guidelines are advisory and not mandatory

3   since January 12, 2005, when the United States Supreme Court

4   declared that they were, in part, unconstitutional.

5       I will consider the impact of the parties' plea

6   agreement on any sentencing issues.  I will hear evidence that

7   the United States or Mr. Ritchie want to present.  I will hear

8   statements of counsel and of Mr. Ritchie if you care to speak,

9   sir.

10       I will decide whether there should be any departure

11   under the guidelines.  I will then look at the factors under

12   18, United States Code, 3553(a) to decide whether to impose a

13   guideline sentence or a nonguideline sentence.

14       Those factors include the nature and circumstances of

15   the offense and history and characteristics of Mr. Ritchie,

16   the need for the sentence imposed to reflect the seriousness

17   of the offense, to promote respect for the law, and to provide

18   just punishment for the offense, to afford adequate deterrence

19   to criminal conduct, to protect the public from further crimes

20   that Mr. Ritchie might commit, to provide him with needed

21   educational or vocational training, medical care, or other

22   correctional treatment in the most effective manner.  I'll

23   consider all kinds of sentences available and the need to

24   avoid sentencing disparity among similarly situated defendants

25   facing similarly situated offenses.

1      If -- the Court adopts as true the factual statements

2   contained in the presentence report as its findings of fact.

3   The 2010 version of the guideline manual was used.  The

4   guideline for violation of 18, United States Code, 1028(a)(7)

5   and 2 is found in 2B1.1(a) of the manual.  The base offense

6   level is 6.  Two levels are added under a stipulation of the

7   parties that the loss was more than $5,000 but less than

8   $10,000.

9      Because the offense involved more than ten victims,

10  including the following:  Washington University, Truman Bank,

11  RL, CN, JC, MZ -- I'll slow down a little -- KG, RD, RE, TI,

12  MR, AS, and JR, two levels are added under 2B1.1(b)(2)(A).

13     Two levels are added because the defendant abused a

14  position of trust by exceeding and abusing his position to

15  obtain and use without authority a means of identification

16  under 3B1.3 and Application Note 2(B).

17     Two levels are reduced for full and timely acceptance

18  of responsibility under 3E1.1(a).  The total offense level is

19  10.  The criminal history category is as high as it can be, 6.

20  And the range is from 20 months to 30 months; is that correct?

21     MS. BERRY:  That's correct, Your Honor.

22     MR. DWYER:  Yes, Your Honor.

23     THE COURT:  Okay.  Will there be evidence by the

24  United States?

25     MS. BERRY:  No, Your Honor.

1    THE COURT:  By the defendant?

2    MR. DWYER:  No, Your Honor.  Thank you.

3    THE COURT:  All right.  At this time do you know of

4    any reason why I should not sentence you, Mr. Ritchie?

5    THE DEFENDANT:  No, Your Honor.

6    THE COURT:  I need to note that I do have the

7    victim -- some victim statements.  Okay.  I will hear first

8    from Ms. Berry, then from Mr. Dwyer, and finally from you,

9    sir, if you care to make a statement.

10    MS. BERRY:  Your Honor, if I may have a moment,

11    please?

12    THE COURT:  Sure.

13    MS. BERRY:  Your Honor, the Government is not

14    requesting a sentence above the guideline range, but we are

15    requesting a sentence at the top end of the guideline range,

16    primarily because the defendant's criminal history.  He has 20

17    criminal history points.  He has a long history of deceit in

18    his employment as well as deceit that led to the criminal

19    conduct for which he received points.

20    We would also note, Your Honor, that we would request

21    a sentence -- that the sentence include three years of

22    supervised release.  We're not requesting a sentence above the

23    guideline range primarily because in this case, Your Honor, in

24    reviewing the pretrial services report, because that was part

25    of the case in that -- at that end, as well as the presentence

1   report, Mr. Ritchie tends to tell untruths for things that

2   really don't have any bearing.  For instance, the fact that he

3   was a consultant for Cleaning Concepts.  The owner of Cleaning

4   Concepts says no, he never worked for them.  When he said that

5   he had his real estate license.  The information provided

6   about his graduation from Southwest Missouri State.  These are

7   things that there really does not seem to be a basis.

8          So we would ask for that three years of supervised

9   release, a special condition of mental health treatment and

10  counseling, and hopefully those things, in addition to a

11  sentence at the high end of the guideline range, will

12  rehabilitate as well as punish the defendant and deter any

13  future conduct, but I don't see that a sentence above the

14  guideline range would meet those sentencing objectives any

15  more than a sentence at the range of 30 months.

16         THE COURT:  Okay.  What about all these state

17  sentences?  Is he going to be serving time on the state

18  sentences?

19         MS. BERRY:  Your Honor, I believe the state sentences

20  have -- he's already served time.  I don't know that -- he's

21  got some pending revocations, but I do not know what the state

22  intends to do about those.

23         THE COURT:  Okay.  Mr. Dwyer?

24         MR. DWYER:  Your Honor, let me address that for you.

25  Mr. Ritchie is to appear in state court tomorrow to deal with

1    the revocations that are pending.  I spoke with Nick Zotos,

2    who represents him in state court, this morning, and he

3    indicated that they have a date with Judge Wilson tomorrow.

4         Mr. Ritchie is in federal custody right now so that

5    there really isn't anything this Court can do to get him into

6    state custody.  Judge Wilson, if he chooses to, may end up

7    running time concurrently or consecutively.  We anticipate

8    concurrent time, but that's something that he can do.

9         There really isn't anything the Court -- this Court

10   can do in terms of ordering a sentence, vis-a-vis the state

11   sentences -- because he is in federal custody, there is no

12   mechanism to get him into state custody to serve any time

13   there until he completes whatever sentence this Court imposes.

14        So I think the 5G1.3 issue is essentially moot;

15   although, as the presentence notes, the relevant conduct in

16   this case included conduct that was part of the state

17   offenses, so -- but I didn't mean to interrupt.

18        THE COURT:  No.  Go ahead.

19        MR. DWYER:  Your Honor, we obviously don't have any

20   objection to whatever term of supervised release the Court

21   imposes.  In fact, you know, I think supervised release may be

22   key in this case because it's going to give Mr. Ritchie a

23   chance to participate in the kind of supervision that now

24   exists in the Eastern District of Missouri.

25        There are resources.  There is real supervision.  And

1  I mean no disrespect to the state parole and probation

2  officers, but their caseloads are such that supervision is

3  oftentimes in the St. Louis area not a very stringent or

4  onerous thing.  And as this Court knows, the probation

5  officers do an excellent job of supervising to assist people

6  in succeeding in the community and supervising to ensure that

7  they don't get into trouble, and promptly notify the court if

8  they do.

9       The mental health resources that will be available,

10  the job placement resources that will be available will

11  obviously benefit Mr. Ritchie and assist him in paying the

12  restitution we know the Court is going to order.

13       You know, at every sentencing there is an elephant in

14  the room, and in Mr. Ritchie's case the elephant is obviously

15  his criminal history, but actually, I think the elephant in

16  the room is standing next to me wearing orange because the

17  question I'm sure that's on everybody's mind that encounters

18  Mr. Ritchie is:  When is he going to begin to realize the

19  potential that he has?

20       Nobody who has worked with him, nobody who has

21  encountered him would doubt that that potential exists.  He's

22  a very bright young man.  He's personable.  He can be very

23  charming.  He makes a good impression when you first meet him.

24  All of those things should be components of success, and it's

25  very obvious that they have not been components of success.

1    I'm asking the Court today to impose a guideline

2  sentence.  The guideline range is 24 to 30 months.  I don't

3  think anything is going to happen in the six months between

4  the low end of the range and the top end of the range that

5  would suggest that the Court should sentence at the top end of

6  the range.

7    And I would point out something that is, I think,

8  important, and that is that Mr. Ritchie has now been in

9  custody for six months.  That six months of custody has been

10  at the St. Louis City Jail.  For very obvious reasons, Mr.

11  Ritchie is not the usual -- is anomalous, shall we say, in the

12  population of the St. Louis City Justice Center, and it has

13  been a very, very difficult period for him.

14    The jail is on lockdown.  The jail is populated by

15  people who are extremely different from Mr. Ritchie in many

16  ways, and it has been very hard for him to deal with the

17  situation at the jail since December 28 of last year.

18    And that confinement at that facility is going to

19  persist probably for somewhere around two more months as the

20  Bureau of Prisons evaluates him for designation and

21  transportation arrangements are made to move him to the Bureau

22  of Prisons.  So he will have served a substantial portion of

23  his court sentence under the most onerous kinds of conditions

24  that are available.

25    I mean, as the Court is well aware, time in local

1  facilities is much more difficult than time in a Missouri

2  Department of Corrections facility or a Federal Bureau of

3  Prisons facility, and that is particularly true of the St.

4  Louis City Justice Center.

5          I would ask for a sentence at the low end of the

6  guideline range.  I would ask the Court not to impose a fine

7  given the restitution obligations that will be owing, and I

8  would ask the Court to impose whatever term of conditions of

9  supervised release it believes are appropriate.

10         THE COURT:  A couple of things.  How do I respond to

11 Ms. Berry intelligently and objectively, based on Mr.

12 Ritchie's criminal history, when one of the elements of

13 3553(a) is to protect the public from further crimes?  Mr.

14 Ritchie, he really has had his hands in somebody else's pocket

15 going all the way back to 2001.

16         As you know, I like to end all sentencing procedures

17 on a positive note because I have an unfailing belief that

18 people can have better lives not only for themselves, but for

19 their families and others.  And maybe it's the mental health

20 component that Ms. Berry raises that may be the solution to

21 this problem, but Mr. Ritchie is kind of a dangerous guy.  I

22 mean in terms of him cheating other people, he seems like he

23 just can't help it.

24         MR. DWYER:  Your Honor, looking at this presentence

25 investigation report, looking at his criminal history, I don't

1  think there's anyone that wouldn't draw the same conclusions

2  that you have and wonder in the same fashion, as the Court

3  has, whether Mr. Ritchie is capable of living without

4  committing a crime, because over the last ten years or so he's

5  not been able to do that.

6  I think a couple of things stood out to me.  One is

7  he's getting punished now.  And he's kind of skated in and out

8  of the city and state justice systems.  The supervision is

9  different in the state supervision.  And he's not endured a

10 long stretch of time in any of the facilities where he's been

11 incarcerated, and he's never been incarcerated at the St.

12 Louis City Justice Center before.  So to the extent that

13 incarceration sends a wake-up call and catches one's

14 attention, it's caught Mr. Ritchie's.

15 There is no life sentence available.  At some point

16 Mr. Ritchie is going to come back to the community and he's

17 going to have to make a life, and the test is really going to

18 be up to him.  That's why I said I think the elephant in the

19 room, the ponderable question here is not as much his prior

20 criminal history -- I guess all criminal history is prior --

21 his criminal history, but whether and when he's going to

22 realize the potential that he has to live as a honest and

23 law-abiding person.

24 As the Court can see just looking at his family here

25 today and from reading the presentence investigation report,

1    this is a young man who comes from a good background and has

2    the potential to do the right things.  I don't -- if there

3    were a mental health issue that I could bring to the Court's

4    attention, I would have done so, but he has had various

5    diagnoses.  I thought very seriously about having him

6    evaluated during the course of our representation and frankly

7    decided that the potential benefit was outweighed by the

8    potential harm.

9         I think that probation is probably going to insist

10   that he seek counseling when he's on supervised release, and I

11   would suggest that that's well advised, but the test is going

12   to come when he's on supervised release as to whether he can

13   meet the conditions and live a law-abiding life.

14        And when he gets there, he's going to arrive at that

15   point after a considerable period of punishment with time to

16   reflect that he can either spend the rest of his life in and

17   out of jails or he can turn 180 degrees and go in the other

18   direction.  I think he's ready to do that.  The question, of

19   course, is:  Will he do that when he meets supervised release?

20   I think given the severe punishment involved in this case and

21   the supervision of the probation office, that that's our best

22   hope for his future.

23        THE COURT:  Do you believe he understands that on

24   supervised release I maintain a very watchful eye on people

25   under supervision, and if I see him stealing while he's on

1  supervision here, that he will have a whole new idea about how

2  fast the criminal justice systems works in terms of getting

3  him arrested?  Do you think he understands that?

4          MR. DWYER:  I hope so, Your Honor.  I've certainly

5  explained it to him.  And I don't -- I may have Jan Good talk

6  to him.

7          THE COURT:  Well, I wouldn't want to talk to her.

8  She scares me to death.

9          MR. DWYER:  But I've tried to channel Jan in my

10  conversations with Mr. Ritchie because of my respect for her

11  and because she is so effective at communicating with her

12  clients, and I hope that the message has been received, Your

13  Honor.

14          THE COURT:  Okay.

15          MS. BERRY:  Your Honor, to address the issue of

16  protecting the public, may I suggest that as a condition of

17  supervised release, that with regard to his employment at

18  least, that he not participate in any employment where he

19  would have access to people's identifying information, means

20  of identification, access device?  At least that temptation

21  would be removed.

22          THE COURT:  I think that's an excellent idea, yeah.

23  Okay.

24          You're not required to speak, but this is your

25  opportunity to do so, and I'll hear anything you have to say,

1  sir.

2        THE DEFENDANT:  Okay.  Thank you.  I'm a little

3  nervous, so excuse me.  Your Honor, I would like to take this

4  time first to apologize to a few people.  The staff at Lewis

5  Rice, the extra work and time that my actions have caused, I'm

6  truly sorry.

7        For the alumni staff at Washington University, alumni

8  relations showed me a work environment that I truly loved.

9  Washington University was an extremely wonderful gift that I

10 took for granted.  Words can't express how truly sorry I am

11 for that.  But mostly, Your Honor, to my friends and family,

12 probably because --

13       THE COURT:  Take your time.  Take your time.  We're

14 in no hurry today.

15       THE DEFENDANT:  Probably just because they're the

16 ones I hurt the most.  And I'm truly sorry for that.  Your

17 Honor, the last six months at the justice center have probably

18 been the worst time -- one of the worst times in my life.  The

19 wickedness there is something that I never want to see again.

20       I'm tired of hurting people.  I'm tired of hurting my

21 parents.  I'm tired of hurting myself.  I'm tired of putting

22 myself in this position.  You know, I don't -- you know, I

23 don't -- excuse me.  I don't want to erase my mistakes.  I

24 mean, I feel bad about my mistakes, but I want to -- I don't

25 want to consider them mistakes.  I want to remember them so I

1     don't make them again.

2          You know, I don't ever -- no offense to you or the

3     Court -- I ever want to see the inside of a courtroom again --

4     or the justice center, for that matter. And I know that if I

5     do something like that again, that's where I'm going to wind

6     up.

7          You know, I see my mother, my father in the courtroom

8     today. Excuse me. I see how much I've hurt them, and I don't

9     want to do that anymore. And you know, I want my freedom. I

10    want to enjoy life, and I don't want to keep on doing this.

11    It's just not what I want, and especially hurting people.

12         THE COURT: Okay. All right. I have to look at the

13    factors in 18, United States Code, 3553(a), first at the

14    nature and circumstances of the offense. Identity theft is a

15    very serious offense. I've had some experience with that up

16    close and personal. My wife has had her identity stolen

17    twice, and unraveling that is just a monstrous problem, and so

18    it is a very serious offense. I understand it from a personal

19    perspective.

20         It needs to reflect the seriousness of the -- strike

21    that. I need to consider also your history and

22    characteristics. Reared in a loving family and adoptive

23    family. Adopted when you were ten years old. Your biological

24    father was abusive physically and verbally. Your mother is an

25    accountant. You have not seen nor been with your biological

1   father since you were ten years old.

2          You describe your work relationship as good, having

3   been reared by your mother and stepfather.  Your employment

4   history is really quite remarkable.  I write on these things

5   down on this piece of paper.  This part over here is allowed

6   for employment.  Well, you exploded that.  You go clear over

7   here to the next section.

8          You worked at the Copia Urban Winery and Market,

9   earning $2,100 a month; Lewis Rice, earning $21,849 a year;

10  Washington University, $33,500 a year; Elsevier Publishing

11  Company, $34,500; May Company, $32,000 a year; Arbor

12  Consulting, Anheuser-Busch, $28,000 a year; InterPark

13  Incorporate, $12,951 a year.  High school, some college.

14         Started drinking when you were 16, but alcohol is not

15  a serious problem.  You used marijuana four times, used powder

16  cocaine ten times before 2007, ecstasy one time -- once a

17  month for six months.

18         Your criminal history is very substantial.  Forgery

19  in 2001.  2002, Counts 1 through 6 stealing.  A 2002 forgery.

20  A 2003 stealing.  2003, Counts 1 and 2 forgery.  2003 DWI.

21  2003, Counts 1 and 2 forgery.  Count -- 2007, stealing by

22  deceit.

23         So there is a pattern that perhaps mental health can

24  address, certainly can address.  Hopefully, it can be

25  effectively addressed.  You have a history of bipolar

1  disorder, other issues I'll not raise on the record.

2      I have to impose a sentence that reflects the

3  seriousness of the offense, that promotes respect for the law,

4  and to protect and provide just punishment for the offense,

5  one that affords adequate deterrence from criminal conduct,

6  one that protects the public from further crimes that you

7  might commit.  And that's the one that causes me some problems

8  more than any.  To provide you with needed educational,

9  vocational training, medical care, mental health treatment,

10 drug treatment in the most effective manner.

11     I need to consider all kinds of sentences available,

12 and I need to avoid sentencing disparity among similarly

13 situated defendants facing similarly situated offenses.

14     Under the Sentencing Reform Act of 1984 and the

15 provisions of 18, United States Code, 3553(a), it is the

16 judgment of the Court that Allen Dean Ritchie is hereby

17 committed to the custody of the Bureau of Prisons to be

18 imprisoned for a term of 27 months.

19     Upon release from imprisonment, you shall be placed

20 on supervised release for a term of three years.  Within 72

21 hours of your release from the custody of the Bureau of

22 Prisons, you shall report in person to the probation office in

23 the district to which you are released.

24     You are ordered to make restitution to victims in the

25 amount of $7,455.82.  These are public victims whose names --

1  which names can be stated on the record.  Washington

2  University, Christopher Goddard, G-O-D-D-A-R-D, One Brookings

3  Drive, Box 1058, St. Louis, Missouri 63130.  $5,203.

4         Truman Bank, attention Stacey Stewart, 7151 Natural

5  Bridge, St. Louis, Missouri 631 -- missing a digit on that

6  one.  I'm not sure about the zip code.  $2,044.71.

7         MS. BERRY:  Your Honor, 63101.

8         THE COURT:  Thank you.  Victim RL, 277 Maple Drive,

9  Missouri 63026, $208.11.  All criminal monetary penalties are

10  due in full immediately.  The defendant shall pay all criminal

11  monetary payments through the clerk of the court.

12         If you do not pay in full immediately, then you shall

13  make payments under the following minimum payment schedule.

14  During incarceration it's recommended that he pay criminal

15  monetary penalties through the installment plan in accordance

16  with the Bureau of Prisons Inmate Financial Responsibility

17  Program at the rate of 50 percent of the funds available to

18  him.

19         If he owes any criminal monetary penalties when

20  released from incarceration, then he shall make payments in

21  monthly installments of at least $150, no less than 10 percent

22  of his gross earnings, whichever is greater, with payments to

23  begin no later than 30 days after release from imprisonment.

24         Until all criminal monetary penalties are paid in

25  full, he shall notify the court and this district's United

1    States Attorney's office financial litigation unit of any

2    material changes in his economic circumstances that might

3    affect his ability to pay criminal monetary penalties.

4         He shall notify this district's United States office

5    finance litigation unit of any change of mailing or residence

6    address that occurs while any portion of the criminal monetary

7    penalties remain unpaid.

8         It is recommended that he participate in the

9    financial responsibility program while incarcerated.

10        While on supervision he shall comply with the

11   following standard conditions that have been adopted by this

12   court and shall comply with the following additional

13   conditions:

14        He shall refrain from any unlawful use of a

15   controlled substance and submit to a drug test within 15 days

16   of the beginning of supervision and at least two periodic drug

17   tests thereafter for use of a controlled substance.

18        He shall participate in a substance abuse treatment

19   program approved by the United States Probation Office, which

20   may include substance abuse testing, counseling, residential

21   reentry center, placement in residential or inpatient

22   treatment.  He shall pay the costs associated with substance

23   abuse services based on a co-payment fee established by the

24   probation office.

25        He shall participate in the mental health program

1    approved by the probation office.  And by the way, under --

2    back to the -- Melanie, this is for you.  I'm ordering mental

3    health while in the Bureau of Prisons, mental health

4    evaluation and treatment, and the R-DAP program.

5            He shall participate in a mental health program

6    approved by the probation office and pay costs associated with

7    the services provided based on a co-payment fee established by

8    the probation office.

9            He shall participate in a vocational services

10   program, which may include job readiness training and skills

11   development training as directed by the probation office and

12   pay the cost associated with these services based on a

13   co-payment fee established by the probation office.

14           He shall participate in a cognitive behavioral and

15   treatment program as directed by the probation office and pay

16   costs associated with these services based on a co-payment fee

17   established by the probation office.

18           He shall provide the probation office and the

19   financial litigation unit of the United States Attorney's

20   office access to any requested financial information.  He's

21   advised that the probation office may share financial

22   information with the financial litigation unit.

23           He shall be prohibited from incurring new credit

24   charges or opening additional lines of credit without the

25   approval of the probation office so long as there is a balance

1  on the court-imposed financial obligation.

2         He shall apply all monies received from income tax

3  refunds, lottery winnings, judgments, or other anticipated or

4  unexpected financial gains to the outstanding court-ordered

5  financial obligation and immediately notify the probation

6  office of the receipt of any indicated moneys.

7         He shall submit his person, residence, office,

8  computer, or vehicle to a search or searches conducted by the

9  probation office based on a reasonable suspicion of contraband

10  or evidence of a violation of a condition of his release and

11  warn any other residents that the premises will be subject to

12  searches under this condition.

13         He has no ability to pay a fine.  He has a negative

14  net worth of $7,219.  No fine is imposed.  He must pay

15  restitution.

16         At the very first part of the conditions of

17  supervised release, Melanie, and concerning all employment, he

18  is prohibited from having access and employment to individual

19  identification information and financial records and cash held

20  by the company at all times without consent of the probation

21  office.

22         It is ordered that he pay a special assessment of

23  $100, which shall be due and payable immediately.

24         I look forward to your early discharge from

25  supervised release without incident, but that's going to be

1  entirely up to you.  I wish you well.  I certainly have a lot

2  of respect for your parents who are here.  I suspect that they

3  have been in court with you before.  And I can tell you they

4  were here quite a while before you arrived, so they haven't

5  given up on you, and there's no reason they should.  Good luck

6  to you.

7          Court is in recess.

8              **(PROCEEDINGS CONCLUDED AT 4:40 PM.)**

<u>CERTIFICATE</u>

        I, Shannon L. White, Registered Merit Reporter and

Certified Realtime Reporter, hereby certify that I am a duly

appointed Official Court Reporter of the United States

District Court for the Eastern District of Missouri.

        I further certify that the foregoing is a true and

accurate transcript of the proceedings held in the

above-entitled case and that said transcript is a true and

correct transcription of my stenographic notes.

        I further certify that this transcript contains

pages 1 through 23 inclusive and that this reporter takes no

responsibility for missing or damaged pages of this transcript

when same transcript is copied by any party other than this

reporter.

        Dated at St. Louis, Missouri, this 10th day of January,

2012.



                    _____
                    /s/Shannon L. White
                    Shannon L. White, RMR, CRR, CCR, CSR
                    Official Court Reporter